UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-00696-WYD

TERRY W. ROGERS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

    Defendant.

_____

**ORDER**
_____

I.    INTRODUCTION

    THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's March 31, 2003 application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff's application, claiming that he became disabled on January 12, 2003 due to posttraumatic stress disorder ["PTSD"] with major depression (transcript ["Tr."] 94), was denied initially.  (*Id.* 68-71.)

    After a hearing in April 2004 (Tr. 582-604), an Administrative Law Judge ["ALJ"] issued a decision on October 5, 2004, that Plaintiff was not disabled.  (*Id.* at 39-58.)  This is discussed in more detail below.  The Appeals Council denied Plaintiff's request for review on February 27, 2006.  That became the final administrative decision and the case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

---

[1] Michael J. Astrue, the current Commissioner of Social Security, has been substituted for former Commissioner Jo Anne B. Barnhart pursuant to FED. R CIV. P. 25(d)(1).

II.     THE UNDERLYING DECISIONS

   A.     The ALJ's Decision

The ALJ noted that Plaintiff was 55 years old on March 31, 2003 when he claims he became disabled, and was 57 at the time of the decision. (Tr. 40.) He further noted that Plaintiff alleged an inability to work "because he cannot get along with fellow employees; he has danger dyscontrol related to hyperarousal symptoms of PTSD; and guilt, sadness and anhedonia related to combat trauma." (*Id.*)

Turning to the sequential evaluation, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 43, 56.) At step two, the ALJ found that Plaintiff's physical impairments—asthma, an ulcer, hypertension, hypercholesterol, neck and arm pain, and knee degenerative joint disease— were not severe as there was no objective medical evidence that these impairments caused more than mild limitations in Plaintiff's ability to work. (*Id.* 44, 57.) As to Plaintiff's mental impairments, after analyzing the medical evidence the ALJ found that Plaintiff had severe impairments consisting of an affective disorder (Major Depressive Disorder), PTSD and anxiety. (Tr. 50, 57.)

At step three, the ALJ analyzed Listing 12.04 (Affective Disorder) and Listing 12.06 (Anxiety-Related Disorder). (Tr. 50-51.) He found that Plaintiff's mental impairments did not meet either Criteria B or C of the Listings. (*Id.* 51.) Accordingly, the ALJ found that the record did not establish listing-level severity. (*Id.*)

As to credibility, the ALJ found that "[t]he claimant has presented objective medical evidence that he has medically determinable severe mental health

impairments—PTSD and an affective disorder—that could reasonably be expected to produce significant non-exertional limitations in his ability to perform basic mental work activities, but not to the extent alleged in his subjective complaints." (*Id.* at 53.)  He concluded, "the claimant's statements about his alleged impairments [are] credible only to the extent they are supported by objective medical evidence of his treating and examining physicians . . . and the residual functional capacity assessment in this case." (*Id.* 54.)

As to residual functional capacity ["RFC"], Plaintiff was found not to have any exertional limitations.  However, he had "significant non-exertional limitations because of his mental impairments." (Tr. 54).  Specifically, the ALJ found that Plaintiff:

> cannot deal with the general public, he can only have minimal (less than occasional) dealings with co-workers and supervisors, and he cannot understand, remember or carry out complex tasks (i.e., he can only perform work at the level of SVP-3 or less).

(*Id.*)  The ALJ also noted a number of additional moderate limitations caused by Plaintiff's mental impairments, including impairments which impact both his activities of daily living and maintaining social functioning. (*Id.*)

Proceeding to step four, the ALJ found that Plaintiff had past relevant work experience for nearly 34 years as a millwright (from July 1969 to January 2003). (Tr. 54.)  The vocational expert ["VE"] testified that Plaintiff could not perform his past relevant work because he should not have more than minimal exposure to supervisors or co-workers. (*Id.*)  The ALJ accepted this testimony and found that Plaintiff could not perform his past relevant work. (*Id.* 57.)  Thus, the burden shifted to the Commissioner

to demonstrate that there are other jobs existing in significant numbers that Plaintiff could perform. (*Id.* 54-55.)

At step five, the ALJ considered Plaintiff's age (an "individual of advanced age"), education (GED), and vocationally relevant past work experience. (Tr. 55.) Using the Medical-Vocational Guidelines as a framework, the ALJ noted that based upon Plaintiff's RFC, he is capable of performing a significant range of heavy work (as well as medium, light and sedentary work). (*Id.*) If Plaintiff were able to perform a full range of heavy work, the ALJ noted that the Guidelines would direct a finding of not disabled. (*Id.*) However, the requirements of heavy work were found to be impeded by Plaintiff's "significant non-exertional limitations." (*Id.*)

Accordingly, the ALJ retained a VE to testify as to whether there are a significant number of jobs that a person with Plaintiff's vocational profile could perform. (Tr. 55.) The VE testified that a hypothetical person with that profile would be capable of making a vocational adjustment to other work. (*Id.*) Examples of the jobs that could be performed include a small product assembler, an electronics worker, an escort vehicle driver, and a hand packer. (*Id.* 55-56.) The ALJ accepted the testimony of the VE and found, based on Plaintiff's vocational profile, that "he is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (*Id.*) Thus, the ALJ found that Plaintiff was not disabled. (*Id.*)[2]

---

[2] The VE also testified that if the same hypothetical person, "on an unpredictable basis, is unable to deal with any other person in an appropriate manner for an unpredictable amount of time there would be no other work that individual could perform." (*Id.*) The ALJ apparently did not accept that Plaintiff's impairments fell within this hypothetical.

B.      The Appeals Council's Decision

After the ALJ's decision was issued, Plaintiff tendered new and additional information to be considered on review by the Appeals Council, including a letter from Plaintiff's counsel and additional medical evidence from Katie Montonya, M.S.  (Tr. 7.) The Appeals Council found no reason to review the ALJ's decision, and denied Plaintiff's request for review.  (*Id.* 4-6.)

III.    ANALYSIS

A.      Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

B.     <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

My review of the record reveals a number of errors that require the Commissioner's decision to be reversed and remanded to the agency for further factfinding.

1.     <u>Whether the ALJ Violated the Treating Physician's Rule</u>

Plaintiff asserts that an array of treating physicians and other professionals determined that he suffers from a severe case of PTSD and recommended that he withdraw from the work force (Tr. 357), and that there was no treating or examining opinion to the contrary. He argues that the ALJ failed to determine if the treating and examining physicians' opinions were well supported by medically acceptable clinical and laboratory diagnostic techniques, and ignored the fact that the opinions were based upon psychological tests and observations consistent with severe, chronic PTSD and its symptoms. He further argues that the ALJ failed to state what weight he gave the treating physicians' opinions and failed to weigh the factors set out in 20 C.F.R. § 404.1527(d)(2). I agree with Plaintiff that the ALJ failed to properly weigh the opinions of the treating and examining physicians, as discussed below.

An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2). When a treating

-6-

physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Goatcher v. U.S. Dept. of Health and Human Services*, 52 F.3d 288, 290 (10th Cir. 1994).

"The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Id.* Generally, the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings." *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

In the case at hand, while the ALJ discussed the medical evidence regarding Plaintiff's mental impairments, he failed to state what weight he was assigning the opinions of many of the treating, examining and/or consulting physicians. The only specific physician that the ALJ assigned weight to was Dr. Wilcox, a staff psychiatrist at the VA who completed a PTSD evaluation. The ALJ stated as to Dr. Wilcox that he did not give his assessment "significant weight." (Tr. 47.) As to the remaining VA doctors and/or clinicians, while the ALJ referenced some of their opinions, including that of Dr. Yap, Plaintiff's treating psychiatrist at the VA Clinic and Ms. Clawson, MS, MSW, Plaintiff's VA counselor since April 2003, the ALJ rejected their opinions only in

connection with their finding that Plaintiff was disabled. (Tr. 43, 50.)[3] He did not state what weight he was assigning to their opinions.

The ALJ thus failed to show that he adequately considered the treating and/or examining practitioners' treatment, diagnoses and findings as to Plaintiff and his symptoms of PTSD, or state what weight, if any, he gave those findings. This was error that requires remand. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quotation omitted). I also note that the ALJ's reference as to Dr. Wilcox that he did not give the opinion "significant weight" does not allow the Court to determine what weight, if any, was given to this finding. It appears, however, that the ALJ gave it no weight, which should have been stated in the opinion.[4]

Further, even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow him to reject their opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). The ALJ's decision does not reflect that he gave deference to

---

[3] The ALJ also discussed at length progress notes from Ms. Pool, Nurse Practitioner for the VA, who had treated Plaintiff for several years, but did not assign any weight to her opinion. (*Id.* 44-46.)

[4] I further note that to the extent some of the practitioners may not have been treating physicians or other "acceptable medical sources", the ALJ was still required to consider these opinions and to provide specific, legitimate reasons for rejecting them. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

the treating physician's findings and weighed them, or that he gave "any consideration of what lesser weight the opinion should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527." *Id.*

As to the ALJ 's rejection of the VA physicians' disability determination, he stated that the determination was not based on social security law, is not binding," and that he gave it no "significant weight." (Tr. 43, 50.) However, "opinions from any medical source on issues reserved to the Commissioner must never be ignored . . . . The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner". *Miller v. Barnhart*, 43 Fed. Appx. 200, 2002 WL 1608452, at *3 (10th Cir. 2002). The ALJ's decision does not show that he actually considered the opinion from VA practitioners as to disability and/or whether those opinions were supported by the treating physicians' findings. Indeed, while the ALJ states that he gave the opinion no "significant weight", it appears from the decision that he gave it no weight. This was error.[5]

The same is true of Dr. Wilcox's assessment, which the ALJ also rejected stating that he did not give it "significant weight." Again, a statement that an assessment is not

---

[5] Plaintiff also takes issue with the ALJ's statement, "Our standards require that an independent reviewer must be able to reach the same conclusion that the claimant is disabled. Therefore, the determination by the [VA] that the claimant is not disabled is not binding on us . . . ." (Tr. 50.) While Plaintiff argues that the ALJ was implying that the state agency physicians must be the ones to reach a conclusion as to disability, I do not construe the ALJ's statement that way. Instead, I construe the ALJ's statement as meaning that an independent reviewer from the Social Security Administration must reach a decision that the claimant is disabled. Obviously, however, if the Plaintiff's interpretation is correct, this would be error. *See Valdez v. Barnhart*, 62 Fed. Appx. 838, 2003 WL 366751 at *2 (10th Cir. 2003) ("The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all").

given significant weight does not allow the Court to determine what weight it was actually given, and it appears that the ALJ actually gave the assessment no weight. I also find that the ALJ's reasons why he did not give weight to Dr. Wilcox's assessment are not supported by the record. Specifically, the ALJ stated that Dr. Wilcox's assessment "is not supported by his clinical notes, or a functional assessment of the claimant's ability to provide basic mental work activities." (Tr. 49.) However, the assessment does appear to be supported by Dr. Wilcox's notes, including his findings as to Plaintiff's complaints, and the low GAF score that he assigned which appears to be his functional assessment of Plaintiff's abilities. (*See* Tr. at 249-51). This also was error.[6]

While on the topic of GAF scores, I note the ALJ chose not to give significance to the GAF scores ranging from a high of 68 to a low of 40 assigned by treating and/or examining physicians.[7] He stated, "The GAF ratings/assessments in the VA medical records are not supported by mental status exams, nor do they identify the degrees of functional limitation in the following four areas, which have been shown to bear a relationship to work activity: (1) activities of daily living; (2) social functioning; (3)

---

[6] I also note that to the extent the ALJ may have rejected Dr. Wilcox's findings based on his reliance on Plaintiff's subjective complaints, this also would have been improper. *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL 2114163 (10th Cir. 2005) ("The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements . . . ).

[7] A GAF score of 31-40 "is extremely low" and "'indicates [s]ome impairment in reality testing or communication ... [or] major impairment in reality testing or communication ... [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006) (quoting DSM-IV at 32). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job). *Lee*, 117 Fed. Appx. at 678 (quoting DSM-IV 34).

concentration, persistence or pace." (Tr. 49.)  He concluded, "Overall, the GAF assessments are of limited probative value, and the undersigned has not given them significant weight." (*Id.*)  I also find error in these findings.

The Tenth Circuit has indicated that, "[s]tanding alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work."  *Lee v. Barnhart*, 117 Fed. Appx. 674, 2004 WL 2810224, at *3 (10th Cir. 2004).  However, "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Id.*; *See also Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (a GAF score of 50 'reflects serious limitations in the patient's general ability to perform basic tasks of daily life").

In this case there was substantial evidence in the record that Plaintiff's GAF scores after the onset date of disability were consistently near or below 50.  (Tr. 49, 449).  The ALJ erred in summarily dismissing the relevance of the GAF scores based on the above authority.  Further, the medical evidence by the VA physicians who assigned the scores substantiate significant functional impairments in the areas noted by the ALJ, and some were supported by mental exams. (*See, e.g.,* Tr at 166, 249-50, 254, 315-17).  The ALJ thus erred in rejecting the GAF scores as unsupported.  Finally, if the ALJ believed that the VA physicians' opinions were not sufficient as to the relevance of the GAF scores, he had a duty to develop the record on this issue. *Thomas v. Barnhart*, 2005 WL 2114163, at *3-4 (10th Cir. 2005).  These errors also must be addressed on remand.

I also find that the ALJ failed to address what evidence he did give weight to. It may be inferred, perhaps, that the ALJ gave weight to the evaluation of consultative psychiatrist Dr. Garnand as to Plaintiff's mental impairments. The RFC stated in the decision (Tr. 54) appears to incorporate the limitations found in Dr. Garnand's assessment. (*Id.* 339-40). Nonetheless, the ALJ was required to clearly state what evidence he relied on in reaching the RFC. Further, the ALJ was required to explain why he felt a nonexamining state physician's assessment was entitled to more weight than opinions of treating and examining physicians. This was error that also requires a remand to the agency.

I further note that to the extent that the Commissioner relies on isolated progress notes which indicated that Plaintiff was making significant progress (Tr. 355, 154), this ignores all the notes and/or opinions of the physicians that Plaintiff was still having significant problems with PTSD. Indeed, minimal progress was noted on some 28 sessions (Tr. 439-42, 444, 445, 447, 451-60, 462-65). Further, a letter signed by Plaintiff's treating practitioners in March 2004 stated that Plaintiff's symptoms were severe and that "it is unlikely that his condition will improve significantly." (*Id.* 357.) Thus, the argument that Plaintiff's PTSD could reasonably be alleviated by medication or treatment does not appear to be supported by substantial evidence. *See Lee*, 2004 WL 2810224, at *3 n. 2 ("The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability").[8]

---

[8] The Commissioner also argues that evidence of daily activities which are inconsistent with a claimant's allegations can support the credibility and RFC findings. However, the daily activities noted by Plaintiff, including mowing the grass, vacuuming, making the bed, riding a motorcycle, reading, going

The Commissioner also points to Dr. Markland's comment that if Plaintiff received vocational rehabilitation training and his symptoms improved with medication and therapy, "he [might] be able to go back to work at another profession with a sedentary job with minimal supervision." (Tr. 142). Defendant argues that a treating physician's opinion that a claimant was a good candidate for rehabilitation supported an inference that he was not disabled. I reject this argument. Dr. Markland's opinion was conditional, *i.e.,* it assumed that certain things must happen in the future before Plaintiff would be able to work at sedentary work. It does not and cannot translate to a finding that Plaintiff can return to work at the present time.

I also find that some of the ALJ's findings are speculation and are not supported by substantial evidence. For example, because Plaintiff was found to be able to do "all normal activities of daily living", the ALJ inferred that Plaintiff is able to do activities that require judgment. (Tr. 53.) The fact that one can perform basic daily activities such as emptying the trash and grooming onself does not translate to a finding that judgment can be used at work. The ALJ also stated, "Although the claimant attended the 'residential' program in January-February 2003, his treating/examining physicians have not recommended psychiatric hospitalization before or after that treatment." (*Id.*) The ALJ states that this factor, among others, is "inconsistent with an individual who is severely debilitated and unable to perform any substantial gainful activity 8 hours a

---

out with his wife or infrequently visiting friends and relatives (Tr. 355), appear to have little to no relationship to the mental impairments noted by Plaintiff's physicians and Dr. Garnand, the consultative examiner. Further, "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

day, 5 days a week on an ongoing basis." (*Id.* 54.) This is an improper lay opinion of the ALJ. It is error to assume that one must be hospitalized for mental treatment in order to find that the person is not disabled because of mental impairments.

Based on these errors, I find that the case must be remanded for a proper consideration of the medical evidence and a proper weighing of the opinions of the medical practitioners as to both Plaintiff's mental and physical impairments.[9]

### 2. Whether the ALJ Failed to Properly Determine Plaintiff's RFC

As stated earlier, the ALJ erred by relying upon only the part of Dr. Garnand's opinion that supported his conclusion. While the Commissioner argues that it is up to the ALJ, not a medical doctor, to evaluate the RFC, it is axiomatic that the RFC must be based on and supported by evidence in the record. The ALJ cannot pick and choose which evidence to rely on, and cannot ignore findings that are supported by the medical evidence. *See Alexander v. Barnhart*, 74 Fed. Appx. 23, 2003 WL 22087496 at * 3 (10th Cir. 2003). Accordingly, the RFC must be reassessed.

The ALJ did not adequately address other issues in assessing Plaintiff's RFC which must be addressed on remand. Specifically, on remand, the ALJ must weigh the functional effects of Plaintiff's PTSD and depression, as well as consider the results of his psychological tests. The ALJ must articulate and adequately "assess the nature and extent of [Plaintiff's] mental limitations" to enable a correct and complete

---

[9] The ALJ's discussion of the evidence related to Plaintiff's physical impairments was essentially nonexistent. (*See* Tr. 44.) This should be corrected on remand.

determination of his "RFC for work activity on a regular and continuous basis." 20 C.F.R. § 404.1545(b).

Also as to Plaintiff's mental RFC, the ALJ must address whether he can "'focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.'"  *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (quotation omitted).  Finally, the ALJ must consider not only whether Plaintiff can perform certain jobs, he must also determine whether Plaintiff "can *hold* whatever job he finds for a significant period of time."  *Id.* at 1442.[10]

As to Plaintiff's physical impairments, the ALJ must adequately assess the medical evidence regarding the impairments and state what weight he gives to the evidence regarding same.  Further, he must weigh Plaintiff's physical and mental impairments in combination, including those he found not to be severe.  Finally, the ALJ must adequately consider whether Plaintiff has a "medical impairment . . which could reasonably be expected to produce the pain or other symptoms alleged . . .", including assessment of Plaintiff's degenerative joint disease and arthritis.  42 U.S.C. § 423(d)(5)(A); *Luna v. Bowen*, 834 F.2d 161, 164-65 (10th Cir. 1987).

### 3. Whether the ALJ Failed to Satisfy His Burden at Step Five

I agree with Plaintiff that the above errors infected the ALJ's step-five evaluation. Since the ALJ must reassess and properly weigh the medical evidence, this may impact

---

[10] There was evidence in the record that Plaintiff had significant difficulty at work, including conflicts with his supervisor and co-workers.  (Tr. 45-46.)

both the RFC and the evaluation at step five. I further note that the ALJ's hypothetical question to the VE (Tr. 602) failed to include all of Dr. Garnand's mental limitations and the limitations noted in the RFC. (*Id*. 54.). This also was error that requires remand. *See Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) (testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision).

IV.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding pursuant to 42 U.S.C. § 405(g).

Dated September 26, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge